# Green *et al. vs* Otter.

APPEAL FROM THE EDMONDSON CIRCUIT.

Case 31.                    *Trusts and Trustees.   Lapse of time.*

*September* 30.    CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

The case stated.    IN April, 1790, Ann Cobb and John Jacob Otter, who were soon afterwards intermarried, made an antenuptial contract in consideration of their contemplated union, whereby she conveyed to a trustee, William Boswell, her estate, consisting of some slaves and other moveables, in trust for securing the profits to the use of herself and husband during his life, reserving to herself a power of appointment, by will, during her coverture, and providing that, in the event of her death whilst covert and without making an appointment, the trust property, with its increase, should go "to the heirs of her body equally."

During the subsistence of the marriage, she and her husband, with the trustee's concurrence, exchanged one of those slaves for another female slave and child—the husband perhaps paying £20 as boot.

In November, 1821, Mrs. Ann Otter, then *covert*, conveyed by *deed*, Barbara, a child of one of the slaves obtained by the said exchange, and also two other slaves, Albert and Joanna, to trustees for the separate use of her married daughter, Elizabeth Green, during her life, remainder to her children.  And, in July, 1823, Green and wife, and Mrs. Otter herself, being about to remove from Virginia to Kentucky, the trustees in the deed of 1821 conveyed the same slaves, upon the same trusts, to Harman R. Otter, who permitted Mrs. Green to enjoy the possession and use of them, until about the time of her death in 1828, when he took possession of them as trustee of her children—who in 1834 filed a bill in Chancery for enforcing their claim to the slaves and their increase.

Decree of Circuit Court.    On the final hearing, the Circuit Judge decided that Mrs. Otter's deed of 1823, was void, either because, in his

opinion, she had no power to make an appointment otherwise than by *will*, or possibly because he thought she had no right of disposition—and also decided that all the slaves passed, by operation of law, to the heirs of John Jacob Otter, dec'd.,.and that his son-in-law, Green, the father of the complainants, was entitled, in virtue of his marriage, to his wife's portion thereof, as one of those heirs. The complainants appeal to this Court, and we are clearly of opinion that the decree is radically erroneous.

It is perfectly evident that John Jacob Otter had no other interest in the slaves embraced in the deed of 1790, than that which he derived from that contract, which undeniably limited his interest to the profits during his life. When, therefore, he died in 1823, his interest terminated and he had, of course, nothing to transmit.

Nor can there be any doubt that the slaves procured in exchange for one of the trust slaves, with the concurrence of all the parties to the ante-nuptial contract, should be considered as held, ever afterwards, under the original trust. The fact that J. J. Otter may possibly have paid a small portion of the value of these slaves, does not, *per se*, affect the substituted trust—because trust property was the principal consideration, and moreover, it does not even appear that he ever asserted any exclusive right in himself.

Admitting then, that the appointment was, as such, in the first instance, ineffectual, (a vexatious question which we need not now consider,) still we cannot perceive how the heirs of John Jacob Otter could have any pretence of title to any of those slaves. Upon his death, the absolute title enured, by the terms of the deed of 1790, to his wife, who survived him and had, by the deed, conveyed her own property to a trustee, for no other purpose than to secure it to herself. And we are of the opinion that the appellants, as children of Mrs. Green, are entitled to the whole of the slaves claimed in their bill, for the following reasons :

1. If the appointment to Mrs. Green and children in 1821, could be deemed void, to any extent or for any purpose, the only reason for such a deduction would be that

By an ante-nuptial contract, the wife conveys her slaves in trust for the benefit of herself and husband during their joint lives; and upon the death of the husband to revert to the wife, reserving the power of disposition to the wife by will, during the coverture. The wife and trustees convey to other trustees, for the benefit of the children of the wife, the husband dies leaving the wife, his heirs have nothing in the slaves.

it might have affected the interest, for life, of J. J. Otter, who had not then died. He seems, however, not to have objected, but to have acquiesced. His wife having a right to the slaves forever as her separate estate, subject only to his usufructuary interest during his life, her disposition of any of them whilst he lived, could have been involved only so far as it might have affected his temporary use. Waiving that interest, her power reserved by deed was unnecessary; for if no interest had been secured to him by the deed, she might, as a *feme sole,* have disposed of the slaves and other moveables as her own separate and absolute estate, without any special power to do so: *Roper on property,* ch. 20, sec. 1, p. 206–7: *Ibid* ch. 19, sec. 2, p. 185. In that event the donees would have taken, not under the nugatory power, but from her directly, as the owner of the absolute property. Were it admitted then that the execution by deed instead of will, was technically imperfect, still, as J. J. Otter acquiesced until his death, and his wife survived, what objection could there be to the title under the deed of 1821?

But even if that deed had been either void or voidable, as to Mrs. Otter herself, in both law and equity, might she not have disposed of the property by verbal gift or sale, or otherwise, as she pleased, after her husband's death? And did she not effectually dispose of it to the use of the appellants, by her long acquiescence in their right, as granted by the deed of 1821? For, dying during the pendency of this suit, she must have been discovert at least twelve years, during all which time, either her daughter or the trustee was in possession of the slaves under her deed of 1821, with her knowledge and consent and without any question by her as to their absolute right to them as held and claimed according to that conveyance.

2. But moreover, as Harman R. Otter accepted the trust and took and held the slaves as Trustee, his *cestui que trusts* are entitled to the benefit of his long possession in their right, adverse to his own claim as heir of his deceased father—and he should, also, be estopped from disputing their title. And, consequently, as he is the only heir excepting the appellants, the lapse of time and the equitable estoppel should alone confirm the exclusive

*Though a power of appointment and disposition by will be reserved, yet if a disposition be made by deed, and possession given & acquiesced in by those concerned, it will not be disturbed.*

*If one accept a conveyance for, and the possession of property in trust for others, and so hold it, the cestui que trust are entitled to the benefit of his possession, against any claim*

right of the latter. Their father has no pretence of title whether the disposition by Mrs. Otter be effectual or not; for if there were no other objection to it, the fact that she survived his wife, and therefore, that wife never had any right unless the gift by her mother in trust was valid, would be conclusive.

From the foregoing conclusions, it is a plain corollary that all dispositions of any of the slaves, as the psoperty either of Green, the father, or of Harman R. Otter, without the consent of the appellants, were void as to them, and should not be permitted to defeat or obstruct their right.

Decree reversed and cause remanded for such proceedings and decree as shall be proper for effectuating the rights recognized and established by this opinion.

*Monroe* for appellants: *Morehead & Reed and Cates & Lindsey* for appellee.

of the trustee, who is estopped.

A conveyance to trustees for the use and benefit of the wife during life, and then to her children, the wife dying, nothing passes to the husband.